IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MICHAEL A. MCCANN, § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 3:16-CV-335 |
| THE STATE OF TEXAS, § | |
| Respondent. § | |

## MEMORANDUM OPINION AND ORDER

The petitioner, Michael A. McCann, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge a conviction for failure to identify by giving false or fictitious information to a police officer (Dkt. 1). After reviewing all of the pleadings and the applicable law under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court concludes that this case must be **DISMISSED** for the reasons set forth below.

I. **BACKGROUND**

A Brazoria County jury convicted McCann of providing a false date of birth to a police officer during a traffic stop, which constituted a violation of Section 38.02(b) of the Texas Penal Code. *See* Brazoria County Criminal Case Number 209154. McCann was sentenced to a 180-day term in county jail, probated for one year. The Fourteenth Court of Appeals of Texas affirmed his conviction, and the Texas Court of Criminal Appeals refused discretionary review. *See McCann v. State*, No. 14-15-01069-CR, 2016 WL

1 / 12

2970147 (Tex. App.—Houston [14th Dist.] May 19, 2016, pet. ref'd); *see also* Texas Court of Criminal Appeals Case Number PD-0857-16. McCann did not file a state habeas petition.

In his federal habeas petition and his additional briefing, McCann argues that Section 38.02 unconstitutionally infringes on his First Amendment right to freely exercise his religion because it defines "date of birth" as the date on which a baby was delivered, not the date on which it was conceived (Dkt. 1 at p. 5; Dkt. 3 at pp. 4–5). McCann also argues that the State should not have been allowed to initiate its prosecution six months after the traffic stop and that the state trial court lacked jurisdiction over him (Dkt. 1 at pp. 7–8).

## II. STANDARD OF REVIEW

The federal writ of habeas corpus is an extraordinary remedy which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3) & 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness"). If a petitioner has not exhausted the remedies available in the state courts, the court reviewing the federal habeas petition may still deny the federal habeas claims on their merits. 28 U.S.C. § 2254(b)(2).

## III. FREE EXERCISE

McCann's first claim is based on the First Amendment's Free Exercise Clause. McCann believes that "life (birth) begins at the 'conception stage' not on the 'delivery

date[,]'" which, according to him, requires him to define his date of birth as the date on which he was conceived and not the date on which he was delivered (Dkt. 3 at pp. 4–5). As a result, the argument continues, compulsory compliance with Section 38.02(b) of the Texas Penal Code violates McCann's free-exercise rights because the State of Texas "refus[es] to accept the conception day as the date of birth and demand[s] the delivery day as [the] date of birth" (Dkt. 3 at p. 5) (emphasis removed). This claim fails.

McCann cannot avail himself of either the federal Religious Freedom Restoration Act ("RFRA"), which only applies to the federal government, or the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which applies to the states but (as the title makes clear) only in the areas of land use regulation and the religious exercise of institutionalized persons. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 289–90 (5th Cir. 2012). Since the heightened standards of those statutes do not apply, the appropriate standard by which to evaluate McCann's free-exercise claim is articulated in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990). *See Cornerstone Christian Schools v. Univ. Interscholastic League*, 563 F.3d 127, 135 & n. 6 (5th Cir. 2009) ("[T]he holding of [*Smith*] remains valid as to state and municipal actions."). Under *Smith*, "[t]he government does not impermissibly regulate religious belief . . . when it promulgates a neutral, generally applicable law or rule that happens to result in an incidental burden on the free exercise of a particular religious practice or belief." *Cornerstone*, 563 F.3d at 135. "Moreover, the First Amendment does not require the Government *itself* to behave in ways that the

individual believes will further his or her spiritual development or that of his or her family." *Id.* (quotations marks omitted; emphasis in original).

As relevant to McCann's case, Section 38.02 prohibits any lawfully detained person from intentionally giving the detaining officer a false name, false residence address, or false date of birth.[1] *See* TEX. PENAL CODE § 38.02(b). The provision under which McCann was prosecuted only applies in the context of lawful detentions, only criminalizes intentional misrepresentations, and makes no reference whatsoever to religious belief. Perhaps most crucially, no one is excepted from its scope—its one narrow exception is not even really an exception. *See* TEX. PENAL CODE § 38.02(e) (specifying that minors who lie about their age to buy alcohol may be prosecuted under either Section 38.02 or the Texas Alcoholic Beverage Code, but not both). In short, although McCann may disagree with how it defines "date of birth," Section 38.02 is a neutral, generally applicable statutory enactment that shows no sign of being rooted in religious animus.[2] *Cf. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S.

---

[1] The same prohibition applies to lawfully arrested (as opposed to merely detained) persons, as well as any "person that the peace officer has good cause to believe is a witness to a criminal offense." TEX. PENAL CODE § 38.02(b). Lawfully arrested (again, as opposed to merely detained) persons are also barred from outright refusing to provide their name, address, or date of birth. TEX. PENAL CODE § 38.02(a).

[2] This conclusion is reinforced by the relationship between three other provisions in the Texas Penal Code. The first is the Code's method for computing age, which provides that "[a] person attains a specified age on the day of the anniversary of his birthdate." *See* TEX. PENAL CODE § 1.06. The second is the Code's definition of "individual," which incorporates the unborn: "'Individual' means a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." *See* TEX. PENAL CODE § 1.07(26). The third is the Code's definition of "person," which includes any "*individual*, corporation, or association." *See* TEX. PENAL CODE § 1.07(38) (emphasis added). The Texas Legislature clearly regards, as McCann does, the unborn as human beings and evidently defines "date of birth" as the date of delivery because the delivery date provides a firm, easily ascertainable baseline for the exact calculation

520, 531–46 (1993) ("Despite the city's proffered interest in preventing cruelty to animals, the ordinances are drafted with care to forbid few killings but those occasioned by religious sacrifice."). It does nothing more than require McCann, who remains free to express his belief that his date of conception is his real "date of birth," to disclose his date of delivery to a police officer who has lawfully detained him so that his age can be calculated and his identity verified—the same requirements it imposes on every other person in Texas.³ *See, e.g., Miller v. Reed*, 176 F.3d 1202, 1206–07 (9th Cir. 1999)

---

of age and the verification of identity. The Court simply sees no reason to believe that the Texas Legislature's definition of "birth" as delivery rather than conception has anything to do with suppressing religious belief.

³ McCann does not claim that this is a case involving compelled speech like, for instance, *Wooley v. Maynard*, 430 U.S. 705 (1977), in which the Supreme Court held that the state of New Hampshire could not criminalize Jehovah's Witnesses' refusal to display the state motto ("Live Free or Die") on their license plates when they found that motto repugnant to their moral, religious, and political beliefs. The Court would have rejected such a claim had McCann made it. "[T]h[e] right not to speak has been limited to the context of government-compelled speech with respect to a particular political or ideological message." *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017). Unlike in *Wooley* and similar cases, McCann was not compelled to publicly disseminate an ideological message he found repugnant; he was only required to provide basic identifying information to a police officer during a legal traffic stop. *See Morales v. Daley*, 116 F.Supp.2d 801, 816 (S.D. Tex. 2000), *aff'd*, 275 F.3d 45, 2001 WL 1267487 (5th Cir. 2001) (rejecting a claim under the First Amendment that the decennial census impermissibly compelled an endorsement of racial categorization and division by forcing the plaintiffs to provide information about their racial heritage for demographic and statistical purposes). For that matter, the Court sees nothing in the statute that would have prohibited McCann from expressing his religious views to the police officer and telling the police officer both his date of conception *and* his date of delivery, so long as the date of delivery (which the officer would have considered the "date of birth" under the statute) was the correct one. More fundamentally, Section 38.02(b) of the Texas Penal Code does not compel particular speech so much as it bars particular conduct carried out by *means* of speech—namely, obstructing police investigations by lying to police officers about one's identity—which further distinguishes McCann's case from cases like *Wooley*. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) ("There is nothing in this case approaching a Government-mandated pledge or motto that the school must endorse. The compelled speech to which the law schools point is plainly incidental to the [law's] regulation of conduct, and it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was

(holding that the plaintiff's free-exercise rights were not violated by a state law conditioning the issuance of a driver's license on the disclosure of the applicant's social security number even though disclosure of the number violated the plaintiff's religious beliefs) ("[The law] is rationally related to California's legitimate interests in locating the whereabouts of errant parents for purposes of carrying out child support programs, collecting tax obligations, and collecting amounts overdue and unpaid for fines, penalties, assessments, bail, and vehicle parking penalties."). McCann's free-exercise allegations do not show that he was prosecuted in violation of the Constitution or laws or treaties of the United States or that his conviction violated fundamental fairness. To the contrary, *Smith* specifically states that "[t]he government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development." *Smith*, 494 U.S. at 885 (quotation marks omitted).

IV. **DELAY**

McCann's second claim is premised on the fact that he was prosecuted more than six months after the traffic stop. According to McCann, his violation of Section 38.02 was not immediately discovered. Rather, "[a]pproximately six months after the original stop a third party alleged that [McCann] had provided false information [to the officer]"

---

in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.") (quotation marks omitted).

(Dkt. 1 at p. 7). It is McCann's position that the State should not have been allowed to "resurrect" his crime six months after it happened (Dkt. 1 at p. 7).

This claim fails as well. The statute of limitations for misdemeanor offenses in Texas is two years, and a violation of Section 38.02 is a misdemeanor. *See* TEX. PENAL CODE § 38.02(c); TEX. CODE CRIM. PROC. § 12.02. "[W]here an indictment is returned within the statute of limitations, preindictment delay does not violate due process unless that delay, in addition to prejudicing the accused, was intentionally brought about by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other bad faith purpose." *United States v. Crouch*, 84 F.3d 1497, 1523 (5th Cir. 1996) (en banc), *cert. denied*, 519 U.S. 1076 (1997). "To demonstrate prejudice, the defendant must offer more than mere speculation of lost witnesses, faded memories or misplaced documents; he must show an actual loss of evidence that would have aided the defense and that cannot be obtained from other sources." *United States v. Jackson*, 549 F.3d 963, 969 (5th Cir. 2008) (quotation marks omitted).

McCann's allegations do not establish that he was prejudiced by the State's conduct. Frankly, given that there are apparently no contested facts in this case, it is hard to see how a showing of prejudice is possible. Moreover, McCann's own allegations of delay negate the element of intent on the State's part—McCann himself claims that his violation of Section 38.02 was not discovered by the State until six months after the traffic stop and that, upon that discovery, he was immediately prosecuted. McCann's

allegations of delay do not show that he was prosecuted in violation of the Constitution or laws or treaties of the United States or that his conviction violated fundamental fairness.

V. **JURISDICTION**

McCann also claims that the state trial court lacked jurisdiction over him. The argument is difficult to understand, but it involves some claimed deficiency in the charging instrument (Dkt. 1 at p. 8). The Court will not grant relief on this ground.

The sufficiency of the charging instrument in a state prosecution is generally a matter of state law, so "the question of whether a defective charging instrument deprived the state court of jurisdiction is foreclosed to a federal habeas court if the sufficiency of the charging instrument was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case." *Millard v. Lynaugh*, 810 F.2d 1403, 1407 (5th Cir. 1987) (internal quotation marks and brackets omitted). The Fourteenth Court of Appeals of Texas expressly held that the charging instrument in McCann's case was sufficient to confer jurisdiction on the trial court. *McCann*, 2016 WL 2970147, at *3. McCann challenged that determination in a petition for discretionary review to the Texas Court of Criminal Appeals (Dkt. 1 at pp. 3, 8), and the Court of Criminal Appeals refused review. *See* Texas Court of Criminal Appeals Case Number PD-0857-16. Review of the jurisdictional issue is foreclosed to this Court. *Alexander v. McCotter*, 775 F.2d 595, 598–99 (5th Cir. 1985) ("By refusing to grant the appellant relief, . . . the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose.").

Even if review of the jurisdictional issue were not precluded, McCann has provided a copy of the charging instrument; and the Court sees no deficiencies in the charging instrument that would entitle McCann to federal habeas relief. A charging instrument is Constitutionally adequate "if it (1) contains the elements of the offense charged and fairly informs the defendant of the charge against him and (2) enables him to plead an acquittal or conviction and bar a future prosecution for the same offense." *Id.*; *see also McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994) ("An indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted."). The charging instrument in McCann's case satisfies that standard. Moreover, the procedures employed by the state trial court complied with Texas jurisdictional law. In Texas, misdemeanor offenses can be charged by information as opposed to grand jury indictment. *Wells v. State*, 516 S.W.2d 663, 664 (Tex. Crim. App. 1974). Because the grand jury safeguard against prosecutorial abuse is absent in such cases, an information must be supported by an affidavit sworn to by "some credible person" other than the prosecutor. *Id.* That supporting affidavit is called a "complaint" when it charges the commission of a crime; but the actual charging instrument is still the information supported by the complaint, not the complaint itself. *Id.*; *see also* TEX. CODE CRIM. PROC. §§ 15.04, 21.22. The information in McCann's case meets the requirements set out by the Texas Legislature and describes the offense for which McCann was eventually convicted (Dkt. 3-1 at p. 13). *See* TEX. CODE CRIM. PROC. § 21.21. Although the complaint supporting that information describes a violation of Section 38.02(b)(3) instead of a violation of Section 38.02(b)(2)

(Dkt. 3-1 at p. 12),[4] "the mere presentment of an information to a trial court invests that court with jurisdiction over the person of the defendant, regardless of any defect that might exist in the underlying complaint." *Ramirez v. State*, 105 S.W.3d 628, 629 (Tex. Crim. App. 2003).

McCann's jurisdictional allegations do not show that he was prosecuted in violation of the Constitution or laws or treaties of the United States or that his conviction violated fundamental fairness.

## VI. CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542

---

[4] Section 38.02(b)(2) prohibits the provision of a false name, address, or birthdate by a person to a peace officer who has lawfully detained the person. Section 38.02(b)(3) prohibits the provision of a false name, address, or birthdate by a person to a peace officer when the peace officer has good cause to believe that the person is a witness to a criminal offense. In other words, both the complaint and the information said that McCann provided a false birthdate to the officer; but the complaint said that McCann was a possible witness to a crime, while the information said that McCann had been lawfully arrested or detained.

U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## VII. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The petition for a writ of habeas corpus (Dkt. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. All pending motions are **DENIED** as moot.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on June 27, 2017.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE